# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| LARRY A. GOODINE, | ) |
|       Petitioner, | ) |
| vs. | ) Case No. 10-0746-CV-W-SOW-P |
| DAVE DORMIRE, | ) |
|       Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Larry A. Goodine, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on July 13, 2010, seeking to challenge his February 2005 convictions and sentences for first degree assault and armed criminal action, which were entered in the Circuit Court of Stone County, Missouri. Liberally construing the petition, petitioner raises seventeen grounds for relief: (1) that the trial court erred in refusing to instruct the jury on defense of premises; (2) that the trial court erred in not modifying the self defense instruction; (3) that the trial court erred in permitting certain remarks by the prosecutor in closing arguments; (4) that counsel was ineffective in failing to submit a proper self-defense instruction to the jury; (5) that counsel was ineffective in failing to object to certain remarks by the prosecutor in closing arguments; (6) that counsel was ineffective in failing to present evidence displaying the severity of petitioner's wounds obtained in his altercation with the victims; (7) that counsel was ineffective in failing to call Amy Napoli as a witness; (8) that newly-discovered evidence, in the form of testimony from witness Tracy Duncan, exists which supports petitioner's claim of self-defense; (9) that newly-discovered evidence, in the form of testimony from witness Mitchell Hopping, exists which supports petitioner's claim of self-defense; (10) that counsel

was ineffective in failing to object to an improper statement by the prosecutor during voir dire; (11) that counsel was ineffective in failing to object to an improper statement by the prosecutor during opening arguments; (12) that counsel was ineffective in failing to object to a statement by witness Randy Baldwin that he would have been killed by petitioner were it not for petitioner being prevented from so doing; (13) that counsel was ineffective in failing to object to Baldwin's testimony regarding his medical expenses; (14) that counsel was ineffective in failing to object or call for a mistrial when the prosecutor improperly elicited testimony from Kevin Davis regarding a prior alleged assault by petitioner; (15) that counsel was ineffective in failing to object to inflammatory statements by the prosecutor during closing arguments; (16) that petitioner's right to due process was violated when he was convicted of a Class A Felony and given a 20-year sentence, even though he was charged in an amended information with only a Class C Felony (punishable up to 7 years); and (17) that appellate counsel was ineffective in failing to argue ground (16) on appeal.

Respondent contends that grounds 1-4 do not state a claim for relief because the Missouri Court of Appeals denied the grounds as a matter of independent state law, and that grounds 5-17 are procedurally defaulted.

## SUMMARY OF FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> [Petitioner] was convicted of assault in the first degree, a violation of section 565.060, and armed criminal action, a violation of section 571.015. n.1 He was sentenced to twenty years for assault and a consecutive term of five years for the armed criminal action. [Petitioner] brings three points on appeal: two claiming error in the jury instructions and one positing plain error for a remark made by the State in closing argument. We find no error and affirm; however, we remand for a correction of a clerical error in the written sentence and judgment.

-2-

Case 4:10-cv-00746-SOW   Document 41   Filed 01/13/12   Page 2 of 12

> n.1 All references to statutes are to RSMo 2000, unless otherwise specified.

[Petitioner] does not challenge the sufficiency of the evidence; however, he did claim self-defense at the trial so facts favorable to his defense will be related in our discussion of the incident. [Petitioner] was residing with his brother, Rick Goodine ("Rick"), because his utilities had been disconnected by his landlord, Fred Bounous ("Fred"), in an effort to evict [petitioner]. n.2 [Petitioner] had been served with an eviction notice a few days before the incident which led to the ultimate convictions. When Fred asked his son, Mike Bounous ("Mike"), to speak with the Goodines about leaving, Mike asked brothers Corey Baldwin ("Corey") and Randy Baldwin ("Randy") to go with him to the trailer park and assist him in notifying the Goodines that they were being evicted.

> n.2 Throughout this opinion, the witnesses will be referred to by their first names for ease of reference because many of them have the same surname. We do not intend any disrespect by using this convention.

The stories of the witnesses diverge at this point; however, it is clear that Mike and Corey went to Rick's trailer while Randy waited at the landlord's trailer. According to the State's evidence, neither Mike nor Corey were carrying weapons when they knocked on Rick's trailer door. [Petitioner] and his brother, who had been drinking, both answered the door and a "heated argument" ensued. [Petitioner], who had kept his hand in his pocket up until then, stepped out and started swinging at Mike; Mike realized that [petitioner] had stabbed him in the chest. The knife, a 4 1/2 to 6-inch long, locked blade hunting knife, hit Mike's rib and went under his chest muscle. n.3

> n.3 [Petitioner] was never charged with assaulting Mike. His convictions relate only to the offense of assaulting Randy.

As Mike jumped off the deck, Rick, who did not have a weapon, attacked Corey. [Petitioner] then came over and stabbed Corey in the arm and wrist. n.4 Mike grabbed a weed eater, which was lying in the yard, and used it to knock [petitioner] off Corey. [Petitioner] said he was going to kill them, jumped off the porch and tried to stab Mike again, but Mike used a TV dinner tray to block the knife.

> n.4 [Petitioner] was not charged with assaulting Corey.

-3-

Randy, who had heard the screaming and saw the commotion, came into the yard to help Corey and Mike, who were trying to get away. Rick told Randy to "stay out of it"; however, [petitioner] approached Randy and stabbed him in the chest within seconds. Randy collapsed, but [petitioner] continued stabbing him in the arm and leg until Fred came into the yard and hit [petitioner] in the head with a cinder block. n.5 [Petitioner] then stabbed Fred under the armpit. n.6

> n.5 The parties do not dispute that Randy's injuries were serious bodily injuries.
>
> n.6 [Petitioner] was not charged with assaulting Fred. Fred has since passed away, but the record does not suggest that his passing was a result of the incident in this case.

[Petitioner] did not testify at trial, however, some of his statements were introduced through various witnesses. Also, his brother, Rick, testified in order to relate the defense's version of the events. Rick testified that sometime before the incident at issue, [petitioner] and Randy had an argument after Randy and Corey tried to pick a fight with [petitioner] at a local bar called the Stagger Inn. There was a physical altercation between [petitioner] and Randy at the Stagger Inn. Randy and Corey also threatened [petitioner] and Rick after the fight by stating, "[t]hey'd catch [petitioner and Rick] outside."

Rick relayed that on the day of the incident both he and [petitioner] bought some beer and drove home to the trailer park. After stepping onto the porch of his trailer, he saw five individuals, Randy, Corey, Mike, Fred, and a man named Floyd, walking fast toward his trailer. Mike, Randy, and Corey came onto the porch of the trailer. Mike then said to [petitioner], "oh, you like to hit old men," referring to his father Fred. [Petitioner] denied touching Fred. At that moment, Mike tried to hit [petitioner], and Randy hit Rick with a spring. A fight started on the porch to the trailer and then spilled into the yard, resulting in [petitioner] and Rick fighting four or five people and getting beaten with "clubs and baseball bats and pipes and chains and stuff." Rick saw Randy holding a knife, but he did not see [petitioner] stab anyone because he was fighting other people. Every person fighting Rick and [petitioner] was armed with a weapon. There was additional evidence that Fred often did not get court orders to have a sheriff evict a tenant from the trailer park, and that his preferred method of eviction was to cut the power to the trailer and to solicit residents to beat up other residents so they would move out. There

-4-

> was also evidence that Randy had a blood alcohol level of 0.249% at the hospital, and that he went into "DT's" and tore out his tubes in intensive care. Randy also tested positive for marijuana and methamphetamine, and he told the doctors that he had taken Xanax and Valium the day of the fight. Corey was so intoxicated that one of the officers that responded to the scene said that he could smell the alcohol coming off Corey and that it was coming out of his pores.
>
> Based on the foregoing evidence, the trial court instructed the jury on first-degree assault, armed criminal action, self-defense, and defense of third persons; however, it refused to give [petitioner]'s proposed instruction on defense of premises. . . .

(Respondent's Exhibit G, pp. 1-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUNDS 1-4

Grounds 1-4 are as follows: (1) that the trial court erred in refusing to instruct the jury on defense of premises; (2) that the trial court erred in not modifying petitioner's self-defense instruction; (3) that the trial court erred in permitting the State to argue in closing that the jury could

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-5-

consider only the acts of the victim, as opposed to being able to further consider acts of third parties, when deciding whether petitioner acted in self-defense; and (4) that trial counsel was ineffective in failing to submit a proper self-defense instruction to the jury. Petitioner contends that the jury instruction on self-defense should have explained the law in a "multiple assailant situation." (Doc. No. 1, pg. 8).

The United States Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68. Therefore, to the extent petitioner challenges the Missouri Court of Appeals' decision as misapplying Missouri law on the propriety of a defense of premises instruction,[2] his claim cannot be reviewed by this Court. Likewise, his claims of error regarding the self-defense doctrine in Missouri[3] cannot be reviewed by this Court.

The Missouri Court of Appeals addressed petitioner's grounds 1-3 on direct appeal. In its thorough opinion, the Missouri Court of Appeals found that the record "indicate[d] a lack of substantial evidence to inject the issue of defense of premises and, therefore, a defense of premises instruction was not warranted." (Respondent's Exhibit G, pg. 8). On ground 2, it found that the self-defense instruction proffered by petitioner "track[ed] the substantive law of self-defense even though it does not exactly mirror the words used in [Mo. Rev. Stat. §] 563.031." (Pg. 20). On ground 3, it found that "the State in its closing argument did not contradict the substantive law of self-defense."

---

[2]In Missouri, defense of premises is a defense of justification, see State v. Dulaney, 989 S.W.2d 648, 650 (Mo. App. W.D. 1999), covered by MO. REV. STAT. § 563.026.

[3]Self-defense in Missouri is covered by MO. REV. STAT. § 563.031.

-6-

(Pg. 23). All of these findings were based completely on state law, as illustrated by the Missouri Court of Appeals opinion. (See Respondent's Exhibit G).

The Missouri Court of Appeals considered ground 4 on appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion. It found that "trial counsel's submission on the self-defense instruction was not in error, plain or otherwise, as determined on direct appeal. . ." (Respondent's Exhibit N, pg. 11). Since counsel did not give an improper instruction, his performance was not deficient under the first prong of Strickland v. Washington, 466 U.S. 668, 687 (1984). Although the Strickland standard is Federal law, whether or not counsel's performance was deficient is a determination of state law, because state law determines the scope of a self-defense instruction. Thus, it is clear that grounds 1-4 cannot be reviewed by this court, because those grounds were decided under Missouri law.[4]

There may be a question as to whether any Federal law is violated by alleged state trial court error in the giving of jury instructions governed by state law. The Supreme Court has not provided an exact framework to analyze this question, but it has stated that "[t]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Gilmore v. Taylor, 508 U.S. 333, 343 (1993). However, the cases in which the United States Supreme Court has "invoked this principle dealt with the exclusion of evidence." Id. Federal law does not cover "instructional errors of state law." Id. at 344. Therefore, federal habeas review of grounds 1-4 is barred.

Grounds 1-4 are denied.

## PROCEDURAL DEFAULT OF GROUNDS 5-17

---

[4]Further, even if petitioner's Strickland claim was examined on the merits, this Court would find that counsel did not render deficient performance in giving a jury instruction that adequately stated Missouri law.

Respondent correctly maintains that grounds 5-17, listed above, are procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

Petitioner brought grounds 1-4 in his state appeals. (See Respondent's Exhibits D & K, petitioner's brief on direct appeal and brief on appeal from the denial of his Mo. Sup. Ct. Rule 29.15 motion). All other grounds raised by petitioner (grounds 5-17) are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner fails to show cause for his procedural default.[5] Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent"

---

[5]Petitioner concedes in his Reply that he "can not show cause or prejudice for failing to advance [all of his grounds except ground 16]." (Doc. No. 39, pp. 13-14). However, he claims that ground 16 is not defaulted, because it deals with a jurisdictional matter - whether the amended information charging petitioner was faulty. However, neither the United States Supreme Court nor the Eighth Circuit Court of Appeals has ever stated that a jurisdictional defect in a state proceeding cannot be defaulted in a federal habeas corpus proceeding. Petitioner gives no authority to support his proposition.

-8-

of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995).

28 U.S.C. 2254(e)(2) provides the basis for bringing new evidence to this Court that was not presented to the state courts:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
> (A) the claim relies on–
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Subsection (A)(i) is inapplicable, because petitioner does not point to a new, retroactive rule of constitutional law that applies to his case. Therefore, he must satisfy parts (A)(ii) and (B) in order to bring new evidence before this Court.

Petitioner attempts to provide new evidence in the form of three witnesses whom he claims should have been called by trial counsel, but were not. First, petitioner claims that Amy Napoli could have testified that Randy Baldwin, petitioner's victim, and Corey Baldwin were intoxicated at the time of the incident which resulted in Randy's stabbing. (Doc. No. 1, pg. 18). Second, petitioner

-9-

claims that Tracy Duncan would have testified that, while Mr. Duncan was at a convenience store, he met Randy Baldwin and Corey Baldwin. The two asked Duncan if he would help them evict petitioner from his trailer, but Duncan declined. Duncan apparently would have testified that Randy and Corey were "too drunk and they would start trouble." (Doc. No. 1, pg. 19). Finally, petitioner claims that Mitchell Hopping would have testified that Randy Baldwin, petitioner's victim, picked up a "spring" and attacked petitioner. Petitioner believes this would have shown Randy to be the aggressor, and that it would have corroborated petitioner's self-defense theory.

Petitioner does not satisfy the requirements of § 2254(e)(2) to present these witnesses as new evidence. At the outset, this Court notes that it is skeptical of petitioner's claims of newly-acquired evidence. Petitioner discusses multiple witnesses whom he claims should have testified; yet he fails to provide so much as an affidavit from those witnesses as proof of their possible testimony.

Second, petitioner cannot satisfy (A)(ii), because the witnesses could have been discovered through the exercise of due diligence. Petitioner concedes that his trial counsel's investigator actually contacted Amy Napoli. (Doc. No. 1, pg. 18). Therefore, she was obviously discovered as a possible witness even before petitioner's trial. Petitioner then claims that Tracy Duncan and Mitchell Hopper, the other two witnesses whose testimony he claims represents newly-acquired evidence, approached him after his trial and his motion for new trial were filed. Petitioner gives no reason why these witnesses could not have been found before trial. Further, if petitioner is attempting to claim that trial counsel inadequately investigated his case, and that counsel's ineffectiveness was the cause of the witnesses not being found, then he could have litigated an ineffective assistance claim in state courts, before bringing his claim to this Court. Petitioner cannot bypass state court review of his claims and proceed to federal court by simply claiming ineffective assistance of post-conviction counsel in

-10-

failing to raise ineffective assistance of trial or direct appeal counsel. The Eighth Circuit has explicitly stated that alleged ineffective assistance of post-conviction relief counsel in not raising all of petitioner's desired claims cannot excuse procedural default. Armstrong v. Iowa, 418 F.3d 924, 927 (8th Cir. 2005).

Third, even assuming *arguendo* that these witnesses have new evidence that can be presented in this Court, petitioner has not satisfied the high threshold required for a showing of actual innocence. At best, his witnesses would have corroborated his self-defense theory, and would have testified that petitioner's victim was drunk at the time of their altercation. However, as noted by the Missouri Court of Appeals, the jury in petitioner's case already was already aware that the victim was drunk. There was evidence that the victim "had a blood alcohol level of 0.249% at the hospital." (Respondent's Exhibit G, pg. 4). The jury also already had testimony before them from petitioner's brother laying out his case of self-defense. Therefore, the three new witnesses, now presented by petitioner as newly-acquired evidence, would merely have been cumulative to other witnesses and evidence already seen by the jury. While these witnesses may have somewhat strengthened the defense's case, they do not present the kind of evidence which would make it "more likely than not that no reasonable juror would have convicted [petitioner]." Schlup, 513 U.S. at 327.

Petitioner has failed to show cause for his default of Grounds 5-17. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 5-17 is not required to prevent a fundamental miscarriage of justice. Carrier, 477 U.S. at 495.

Grounds 5-17 are denied, and the case will be dismissed, with prejudice.

**CERTIFICATE OF APPEALABILITY**

-11-

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## **ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

    /s/ Scott O. Wright
SCOTT O. WRIGHT
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: January 13, 2012.